UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| DIANE M. CHARETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ST. JOHN VALLEY SOIL AND WATER | ) |
| CONSERVATION DISTRICT, | ) |
| | ) |
| and | ) |
| | ) |
| DARLING'S AGENCY, LLC, | ) |
| | ) |
| and | ) |
| | ) |
| STATE OF MAINE, DEPARTMENT OF | ) |
| AGRICULTURE, CONSERVATION, | ) |
| AND FORESTRY, | ) |
| | ) |
| and | ) |
| | ) |
| DAVID POTTER, individually, | ) |
| | ) |
| and | ) |
| | ) |
| DUANE THERIAULT, individually, | ) |
| | ) |
| and | ) |
| | ) |
| KURT COULOMBE, individually, | ) |
| | ) |
| Defendants | ) |
| | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

Plaintiff, Diane M. Charette, hereby complains against Defendants, St. John Valley Soil

and Water Conservation District; Maine Department of Agriculture, Conservation, and Forestry;

David Potter, individually; Duane Theriault, individually; and Kurt Coulombe, individually, as follows:

1)      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Civil Rights Act of 1991, 42 U.S.C. § 1981a; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.  § 794 ("Rehab Act"); 42 U.S.C. § 1983; the First Amendment to the United States Constitution ("First Amendment"); the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ("Equal Protection"); the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 et seq.; and the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 831 et seq. ("WPA").

## JURISDICTION

2)      This court has proper subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

3)      This court has proper supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4)      This action properly lies in the District of Maine pursuant to 28 U.S.C.  § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

5)      This action is properly filed and shall be tried in Bangor because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Aroostook County, Maine.

## PARTIES

6)      Plaintiff is a citizen of the United States and the State of Maine who resides in the Town of Presque Isle, County of Aroostook, State of Maine.

2

7)      Defendant St. John Valley Soil and Water Conservation District ("SJVSWCD") is an agency of the State of Maine with a principal office in the Town of Fort Kent, County of Aroostook, State of Maine.

8)      At all material times, SJVSWCD has operated a "program or activity receiving Federal financial assistance" within the meaning of 29 U.S.C. § 794.

9)      Defendant Maine Department of Agriculture, Conservation, and Forestry ("DACF") is an agency of the State of Maine with a principal office in the Town of Augusta, County of Kennebec, State of Maine.

10)     At all material times, DACF has operated a "program or activity receiving Federal financial assistance" within the meaning of 29 U.S.C. § 794.

11)     Defendant David Potter is an individual who resides in the Town of Fort Kent, County of Aroostook, State of Maine.

12)     Defendant Duane Theriault is an individual who resides in the Town of St. Agatha, County of Aroostook, State of Maine.

13)     Defendant Kurt Coulombe is an individual who resides in the Town of St. Agatha, County of Aroostook, State of Maine.

14)     This complaint is brought against the individual Defendants in their individual capacities.

15)     At all material times, the individual Defendants were acting within the scope of their employment and under color of state law.

## ADMINISTRATIVE PROCEEDINGS

16)    Before filing suit, Plaintiff filed a charge of employment discrimination against

Defendants with the Maine Human Rights Commission ("MHRC") and the Equal Employment

Opportunity Commission ("EEOC").

17)    On November 3, 2016, the MHRC issued Plaintiff a right-to-sue letter pursuant to the

MHRA, 5 M.R.S. § 4612(6).

18)    On January 5, 2017, the United States Department of Justice, on behalf of the

Attorney General, mailed Plaintiff a notice of right to sue pursuant to Title VII, 42 U.S.C. §§

2000e-5(f)(1).

## STATEMENT OF FACTS

19)    Plaintiff was hired on August 26, 2014, to work as the District Coordinator for the

SJVSWCD.

20)    At all material times, the SJVSWCD was governed by a board of five "supervisors"

consisting of Defendant David Potter, Chairman; Defendant Duane Theriault, Co-Chairman;

Defendant Kurt Coulombe, Treasurer; John "Gene" Desjardins; and Peter Smith. Thomas

Schneck was an "associate supervisor."

21)    DACF oversees the various soil and water conservation districts, including

SJVSWCD.

22)    David Rocque oversees the soil and water conservation districts on behalf of DACF.

23)    Three of the SJVSWCD supervisors are elected and two are appointed by the DACF.

24)    Approximately two-thirds of the SJVSWCD budget is controlled by the DACF.

25)    The statutory scheme contemplates the DACF's close interrelationship and oversight of Soil and Water Conservation Districts and supervisors, including control of their funding. *See* 12 M.R.S. § 54.

26)    Here, as is described in greater detail below, the DACF was closely involved with Plaintiff's complaints against the SJVSWCD, and it exercised oversight of her employment-related matter.

27)    Based on information and belief, at all material times SJVSWCD and DACF were an integrated enterprise based on an interrelation of operations, common management, centralized control of labor relations, and common ownership.

28)    Alternatively, DACF and SJVSWCD were Plaintiff's joint employers for purposes of Title, VII, the Rehab Act, and the MHRA.

29)    In November 2014, Defendant Potter stated that he wanted to make something clear to Plaintiff. He then warned Plaintiff that she "will not have [her] way with" him and that even if she "were to dance naked on the desk" he still would not let her have her way.

30)    He was very stern and angry when he made this statement, and Plaintiff found it highly offensive.

31)    During a November 12, 2014, board meeting, Defendant Potter stated that SJVSWCD could make money selling equipment. Mr. Desjardins informed Defendant Potter that SJVSWCD had done this in the past and they had been told to cease the practice immediately. Defendant Potter said, "then we'll do it until they tell us to stop."

32)    In response, Plaintiff informed Defendant Potter that she would not do anything illegal. He then became agitated and said, "I suppose now you're going to start telling me how to do my job." Plaintiff stated, "No, I'm just going to say how I'm going to do my job."

33)    Plaintiff could sense lots of anger coming from Defendant Potter, and she was frightened.

34)    The following day, Defendant Potter came to Plaintiff's office and said he could not find the resignation letter from a previous District Coordinator. He angrily accused Plaintiff of taking the personnel files of previous SJVSWCD employees. When she told him that she had not taken the files, he had an outburst and reacted as if she were lying to him. Plaintiff was alarmed.

35)    Defendant Potter later found the resignation letter at home, but he never apologized to Plaintiff.

36)    Later that week, Mr. Desjardins called to ask how things were going. Plaintiff informed him about how Defendant Potter had acted toward her and that she was afraid of him.

37)    Mr. Smith then called Plaintiff and she repeated her concerns to him.

38)    Mr. Schneck also contacted Plaintiff, and she informed him of her concerns about Defendant Potter.

39)    During that week, Defendant Theriault also came into the office. At that time a United States Natural Resources Conservation Service ("NRCS") employee, Seth Jones, and she informed him of how Defendant Potter had been acting towards her.

40)    SJVSWCD shared NRCS office space.

41)    Based on information and belief, Defendant Potter learned about Plaintiff's complaints to others about him shortly after she made them.

42)    The week of November 17, 2014, Plaintiff tried to contact Defendant Potter by phone and by e-mail in order for him to come to the office to sign her payroll check, but he did not respond. Previously, Defendant Potter had always been willing to sign Plaintiff's check.

43)     Because Defendant Potter would not respond, Plaintiff took the check to Defendant Coulombe's house for his signature. When she arrived at his home, she informed him about her interactions with and fears of Defendant Potter.

44)     On December 18, 2014, Plaintiff received a phone call from Mr. Rocque, and he informed her that he could come to a board meeting any time to discuss any issues she was having. Mr. Rocque told Plaintiff that a NRCS employee, Bob Bills, had contacted him because Mr. Bills was very concerned about the way Defendant Potter was treating her. Mr. Rocque asked Plaintiff if he could come to a board meeting. She then checked with Defendant Coulombe, who asked for Mr. Rocque's phone number and asked Plaintiff to keep the issue between Defendant Coulombe and Plaintiff.

45)     That same day, in relation to Plaintiff's request a week earlier for an upgrade to a newer version of Microsoft Word, which request had been supported by Mr. Schneck, Defendant Potter wrote: "Tom: Thanks for the reply. I agree that we should update the software on our laptop next year. But, I see no reason why the work can't be done now on the NRCS computer. Its right there in front of her. What am I missing? Dave."

46)     On December 29, 2014, Defendant Potter angrily confronted Plaintiff about working from home on snow days.

47)     In response, Plaintiff explained that she had only worked from home on two days during snow storms, and that she had not been told previously that she could not do so.

48)     Defendant Potter told Plaintiff that the issue would be addressed before the board.

49)     Plaintiff was very uncomfortable during this discussion as she could feel that Defendant Potter was very angry at her.

50)      The next day, Defendant Potter circulated to the other supervisors a memo criticizing Plaintiff about working from home and threatening her position. Instead of putting the issue in context, he simply referred to Plaintiff as "working at home." A copy of his email with the memo is attached as Exhibit A and incorporated herein.

51)      Plaintiff was highly offended by the implication in Defendant Potter's email that she was abusing her position and working from home on a regular basis, and she felt like she had to respond to the other supervisors to explain, which she did. A copy of Plaintiff's response is attached as Exhibit B and incorporated herein.

52)      In reply, Defendant Potter circulated another email again threatening Plaintiff's position and stating, in part, "[y]ou will need to verify that the office was closed by Seth for 'snow days' on the days you worked from home." A copy of Defendant Potter's reply is attached as Exhibit C and incorporated herein.

53)      Defendant Potter later himself emailed a NRCS staff member asking how many days the office was closed due to bad weather. A copy of his email is attached as Exhibit D and incorporated herein.

54)      On January 6, 2015, Defendant Potter emailed Plaintiff and copied the other supervisors accusing Plaintiff of falsely stating to an outside contact that Defendant Potter had been forwarding emails to Plaintiff's personal email address. A copy of the email exchange is attached as Exhibit E and incorporated herein.

55)      On January 7, 2015, Defendant Potter approached Plaintiff at Plaintiff's desk and asked where the applicants' files were for Plaintiff's position. He warned Plaintiff not to throw them away because she was still on probation. It was the fourth time since she started that

Defendant Potter warned Plaintiff that she was still in her probationary period. He was very stern when he said it to her.

56)     After she complained about Defendant Potter, he changed the way he interacted with her. Although he had been stern from the beginning, he became more hostile toward her after she complained. As a result, she eventually requested that she and Defendant Potter not have contact without others present because she was experiencing such high levels of stress and anxiety when they interacted.

57)     Later, Plaintiff's doctor recommended that she not have any contact with Defendant Potter at all because of the negative health effects it caused.

58)     On many occasions Plaintiff expressed her fears of Defendant Potter's anger and instability to SJVSWCD.

59)     On January 14, 2015, Plaintiff attended a board meeting with her lawyer to express concerns about the sexual and retaliatory harassment she had been facing by Defendant Potter. Although Defendant Potter and Defendant Theriault did not want to let Plaintiff's lawyer address them, they reluctantly agreed to allow him to make a brief statement, which he did, expressing that Plaintiff had been subjected to sexual harassment and a hostile work environment by Defendant Potter. He also provided a letter to the same effect and expressing that she may file a complaint with the Maine Human Rights Commission. A copy of his letter is attached as Exhibit F and incorporated herein.

60)     Plaintiff's lawyer also submitted a "Grievance Report" from Plaintiff. A copy of that is attached as Exhibit G and incorporated herein.

61)     During the meeting on January 14th that followed, Defendant Potter said at least twelve times that Plaintiff was a probationary employee. He suggested changes to the personnel

9

policy that adversely impacted Plaintiff, such as changes addressing administrative leave and snow days.

62)     Also discussed during the meeting was Plaintiff's authority to sign the contribution agreement between SJVSWCD and the NRCS. The agreement allowed SJVSWCD to occupy the NRCS space in exchange for Plaintiff's performing services for NRCS. Prior to the meeting, Plaintiff was told that she was going to be given the authority to sign the agreement, but Defendant Potter deleted Plaintiff's name from the list of people with that authority during the meeting. Both Defendant Coulombe and Defendant Theriault agreed with Defendant Potter.

63)     Also discussed was that Plaintiff would be required to give the supervisors the passwords for her computer so that they could access them whenever they wanted. Also during the meeting Defendant Potter and Defendant Theriault refused to allow Plaintiff to go for Plaintiff's Government Lincpass and an erosion control workshop on February 2, 2015, as she had planned. Defendant Potter said it was too early and there was not enough trust yet.

64)     Defendant Coulombe later refused to sign the NRCS contribution agreement that Plaintiff had worked on extensively. He said, "because of this situation I no longer want to do this." Previously, Defendant Coulombe had signed the agreements without incident.

65)     Plaintiff then emailed Defendant Potter to sign the agreement, and she left it for him on Plaintiff's desk.

66)     Plaintiff learned on January 22, 2015, that Defendant Potter had not signed the agreement, which put Plaintiff's job in jeopardy.

67)     On January 15, 2015, Plaintiff's husband took her to the emergency room because she thought she was having a heart attack. She was diagnosed with anxiety and panic attacks and was taken out of work for the following day because of the stress she was under at work.

10

68)     Plaintiff saw her primary-care provider on January 16, 2015. She diagnosed Plaintiff with anxiety disorder due to her reaction to the hostile work environment. She started Plaintiff on anti-anxiety medication. She also removed Plaintiff from work, initially for two weeks, but she subsequently kept Plaintiff out of work until the end of her employment with SJVSWCD/NRCS.

69)     As a result of her adverse treatment by Defendants, Plaintiff developed mental or psychological disorders, including anxiety disorder, depression, and severe panic attacks.

70)     These mental impairments had an actual or expected duration of more than six months and impaired Plaintiff's health to a significant extent as compared to what is ordinarily experienced in the general population.

71)     They also substantially limited one or more of Plaintiff's major life activities, including, but not limited to, sleeping, concentrating, thinking, interacting with others, and working; as well as the normal operation of neurological and brain functions.

72)     During her employment, Plaintiff had a record of the above-described disabilities.

73)     During her employment, Defendants regarded Plaintiff as having or likely to develop the above-described disabilities.

74)     Plaintiff filed a Workers' Compensation claim for mental injury caused by mental stress, which was approved. Such an injury is not compensable unless it is demonstrated by clear and convincing evidence that "[t]he work stress was extraordinary and unusual in comparison to pressures and tensions experienced by the average employee; and [t]he work stress, and not some other source of stress, was the predominant cause of the mental injury." 39-A M.R.S. § 201(3).

75)     Following the January 14th meeting, two of the supervisors, Mr. Desjardins and Mr. Smith, wrote to Mr. Rocque expressing concern about what was happening at SJVSWCD,

including the way Plaintiff was being treated, and requesting guidance. A copy of their letter is attached as Exhibit H and incorporated herein.

76)    Following the January 14th meeting, Plaintiff's lawyer wrote to Mr. Rocque, also explaining the hostile work environment she was facing. A copy of that letter is attached as Exhibit I and incorporated herein.

77)    On January 22, 2015, Plaintiff and her lawyer attended a special board meeting that they understood would address the hostile environment Plaintiff was facing. Instead, the board went into a special meeting, and Plaintiff and her lawyer were not allowed to participate.

78)    After Plaintiff went out of work, Defendant Potter picked up her paycheck from the accountant's office, and it was withheld from Plaintiff for four weeks even though she made several attempts to receive it.

79)    In February 2015, Plaintiff was interviewed by an outside lawyer hired by SJVSWCD to investigate Plaintiff's complaints. Plaintiff subsequently requested a copy of the lawyer's findings, but SJVSWCD refused to provide it to her.

80)    On May 7, 2015, SJVSWCD's lawyer wrote to Plaintiff's lawyer offering, on a three-month temporary basis, to return Plaintiff to work under a different supervisor than Defendant Potter and to amend the personnel policy accordingly. A copy of that letter is attached as Exhibit J and incorporated herein.

81)    Prior to that letter and after Plaintiff went out of work in January 2015, nobody at SJVSWCD had approached Plaintiff to address her complaints or attempt to find a solution to return Plaintiff to work.

82)    Under the return-to-work offer, despite changing Plaintiff's immediate supervisor, Defendant Potter would have continued to be the Chair, and Plaintiff would have been required

to interact with him regularly as the District Coordinator. Mr. Potter also would have continued

to have influence over Plaintiff's position as Chair even though he was not Plaintiff's direct

supervisor. Under these circumstances, Plaintiff was still medically unable to return to work.

83)     On May 26, 2015, Mr. Rocque sent an email to the SJVSWCD supervisors that he

wanted to schedule a meeting for June 2, 2015, which would include Plaintiff, and the topic of

which would be "board functionality."

84)     In response, Defendant Potter emailed a lengthy reply, copying the supervisors and

others, in which he chastised Plaintiff and then stated, in part:

> I understand Diane is collecting workers compensation for job related stress ... she
> continues to be unable to return to work. Will she recover more quickly if the
> outcome of this meeting is favorable to her? Will she continue to be disabled if
> the outcome is not favorable to her? I'm having a hard time understanding what
> possible benefit will come from this approach. I do know this: The majority of the
> Board members believe that Diane is the wrong person for the position.
> ...I will not commit to attend a meeting that will likely amount to a set up by
> Plaintiff's enemies. Maybe I will attend and preside. Maybe not.

> A copy of the email is attached as Exhibit K and incorporated herein.

85)     At the June 2nd meeting, which Plaintiff and her lawyer attended, Plaintiff's

complaints were not addressed as requested by Mr. Rocque.

86)     Defendant Theriault stated during the meeting that he never wanted Plaintiff in the

District Coordinator position.

87)     In June 2015, Mr. Rocque left Plaintiff phone messages indicating that, if she did not

return to work prior to the end of June, SJVSWCD would not receive the funds allocated to it.

88)     On June 3, 2015, Plaintiff's lawyer wrote to SJVSWCD's lawyer expressing concern

about the way the June 2nd meeting was handled, the way she was being treated, requesting that

Plaintiff's job duties and the personnel policies revert back, and that she be informed of the

13

results of the outside lawyer's investigation. A copy of Plaintiff's lawyer's email is attached as Exhibit L and incorporated herein.

89)     On June 26, 2015, SJVSWCD's lawyer responded in a letter to Plaintiff's new lawyer. He reiterated the offer to change Plaintiff's immediate supervisor. He also stated that she would not be provided a copy of the outside investigator's report. A copy of that letter is attached as Exhibit M and incorporated herein.

90)     On July 17, 2015, Plaintiff's lawyer responded that Plaintiff had a mental disability that prevented her from having contact with Defendant Potter, and, for that reason, she was asking for a reasonable accommodation that she not have contact with him after she returned to work. He stated that she was medically unable to return to work under the arrangement SJVSWCD proposed. He also stated that she needed some assurance that Plaintiff's complaints were taken seriously, appropriate discipline was imposed, and further harassment would not occur. A copy Plaintiff's new lawyer's letter is attached as Exhibit N and incorporated herein.

91)     On August 3, 2015, SJVSWCD's lawyer responded. For the first time, she indicated that Defendant Potter had recused himself from any matters relating to Plaintiff's status. She also requested information from Plaintiff's doctor supporting Plaintiff's reasonable accommodation request. A copy of her letter is attached as Exhibit O and incorporated herein.

92)     On August 25, 2015, Plaintiff's lawyer emailed Plaintiff's doctor's completed Reasonable Accommodation form to SJVSWCD's lawyer, which clarified that she should not have any involvement with Defendant Potter. A copy of the form is attached as Exhibit P and incorporated herein.

93)     On October 21, 2015, SJVSWCD's lawyer wrote to Plaintiff's lawyer that SJVSWCD would return Plaintiff to work, but that Plaintiff's hours would be cut from 32 hours

14

per week to 20 hours per week and that another individual would share Plaintiff's position and attend board meetings in Plaintiff's place. A copy of SJVSWCD's lawyer's letter is attached as Exhibit Q and incorporated herein.

94)     On October 30, 2015, Plaintiff's lawyer responded expressing Plaintiff's concerns about a reduction in hours and shared position, and proposing that she continue with the same number of hours and as the sole District Coordinator. To avoid Defendant Potter, she proposed that she could meet with Plaintiff's supervisor, Peter Smith, each month prior to the scheduled board meetings and Mr. Smith could relay information between the Board and her. A copy of Plaintiff's lawyer's email is attached as Exhibit R and incorporated herein.

95)     On November 23, 2015, SJVSWCD rejected Plaintiff's proposal. A copy of SJVSWCD's lawyer's email is attached as Exhibit S and incorporated herein.

96)     Plaintiff had no alternative but to resign her employment, which she did on December 8, 2015. A copy of Plaintiff's resignation letter is attached as Exhibit T and incorporated herein.

97)     The individual Defendants' actions toward Plaintiff described above were because of her sex; because of her disability; because she complained about sex discrimination; because she requested reasonable accommodations for her disability; because she engaged in activity protected under the WPA, the MHRA, and Title VII and opposed practices that would be a violation of those laws; and because she complained about matters of public concern.

98)     Their conduct was unwelcome to Plaintiff.

99)     It affected the terms, conditions, or privileges of Plaintiff's employment and created an intimidating, hostile, and offensive working environment.

100)     It was both objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive, and Plaintiff in fact did perceive it to be so.

101)    SJVSWCD and DACF knew or should have known of the conduct and failed to take immediate and appropriate corrective action.

102)    The individual Defendants' actions also would well dissuade a reasonable worker from asserting her rights or opposing unlawful discrimination under the MHRA, Title VII, and the Rehab Act; complaining about sex discrimination; or complaining about matters of public concern.

103)    The individual Defendants acted intentionally and with malice or reckless indifference to Plaintiff's rights under the MHRA, the First Amendment, and the Equal Protection Clause.

104)    As a result of Defendants' unlawful discrimination Plaintiff has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, emotional pain, suffering, inconvenience, and other pecuniary and non-pecuniary losses.

105)    Plaintiff has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from his treatment by Defendants unless Defendants are enjoined by this court.

## COUNT I:  MHRA VERSUS SJVSWCD

106)    Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

107)    SJVSWCD is liable under the MHRA because Plaintiff was subjected to adverse employment actions because of her sex, because of her disability, and because she engaged in activity protected under the WPA.

16

108)     SJVSWCD is liable under the MHRA because Plaintiff was subjected to materially adverse actions because she opposed practices that would be a violation of the MHRA and asserted her rights under the MHRA.

109)     SJVSWCD is liable under the MHRA because Plaintiff was subjected to a hostile work environment because of her sex, because of her disability, and because she engaged in activity protected under the WPA and the MHRA.

110)     SJVSWCD is liable under the MHRA because Plaintiff was constructively discharged because of her sex, because of her disability, and because she engaged in activity protected under the WPA and the MHRA.

111)     At all material times, Plaintiff was qualified to work for SJVSWCD and DACF, meaning, with or without reasonable accommodation, she could perform the essential functions of her job.

112)     SJVSWCD is liable under the MHRA because it failed to engage, in good faith, in an informal, interactive process with Plaintiff to determine an appropriate accommodation, in violation of the MHRA.

113)     SJVSWCD is liable under the MHRA because it failed to provide plaintiff with reasonable accommodations, in violation of the MHRA.

## COUNT II:  MHRA VERSUS DACF

114)     Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

115)     DACF is liable under the MHRA because Plaintiff was subjected to adverse employment actions because of her sex, because of her disability, and because she engaged in activity protected under the WPA.

116)   DACF is liable under the MHRA because Plaintiff was subjected to materially adverse actions because she opposed practices that would be a violation of the MHRA and asserted her rights under the MHRA.

117)   DACF is liable under the MHRA because Plaintiff was subjected to a hostile work environment because of her sex, because of her disability, and because she engaged in activity protected under the WPA and the MHRA.

118)   DACF is liable under the MHRA because Plaintiff was constructively discharged because of her sex, because of her disability, and because she engaged in activity protected under the WPA and the MHRA.

119)   DACF is liable under the MHRA because it failed to engage, in good faith, in an informal, interactive process with Plaintiff to determine an appropriate accommodation, in violation of the MHRA.

120)   DACF is liable under the MHRA because it failed to provide plaintiff with reasonable accommodations, in violation of the MHRA.

## COUNT III:  MHRA VERSUS DAVID POTTER

121)   Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

122)   David Potter is liable under the MHRA because he interfered with Plaintiff's right to be free from discrimination and retaliated against Plaintiff because she opposed unlawful practices under the MHRA. *See* 5 M.R.S. § 4633(1), (2).

## COUNT IV:  MHRA VERSUS DUANE THERIAULT

123)   Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

18

124)    Duane Theriault is liable under the MHRA because he interfered with Plaintiff's right to be free from discrimination and retaliated against Plaintiff because she opposed unlawful practices under the MHRA. *See* 5 M.R.S. § 4633(1), (2).

## COUNT V:  MHRA VERSUS KURT COULOMBE

125)    Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

126)    Kurt Coulombe is liable under the MHRA because he interfered with Plaintiff's right to be free from discrimination and retaliated against Plaintiff because she opposed unlawful practices under the MHRA. *See* 5 M.R.S. § 4633(1), (2).

## COUNT VI:  REHAB ACT VERSUS SJVSWCD

127)    Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

128)    SJVSWCD is liable under the Rehab Act because Plaintiff was subjected to adverse employment actions because of her disability.

129)    SJVSWCD is liable under the Rehab Act because Plaintiff was subjected to materially adverse actions because she opposed practices that would be a violation of the Rehab Act and asserted her rights under the Rehab Act.

130)    SJVSWCD is liable under the Rehab Act because Plaintiff was subjected to a hostile work environment because of her disability.

131)    SJVSWCD is liable under the Rehab Act because Plaintiff was constructively discharged because of her disability.

19

132)   SJVSWCD is liable under the Rehab Act because it failed to engage, in good faith, in an informal, interactive process with Plaintiff to determine an appropriate accommodation, in violation of the Rehab Act.

133)   SJVSWCD is liable under the Rehab Act because it failed to provide plaintiff with reasonable accommodations, in violation of the Rehab Act.

### COUNT VII:  REHAB ACT VERSUS DACF

134)   Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

135)   DACF is liable under the Rehab Act because Plaintiff was subjected to adverse employment actions because of her disability.

136)   DACF is liable under the Rehab Act because Plaintiff was subjected to materially adverse actions because she opposed practices that would be a violation of the Rehab Act and asserted her rights under the Rehab Act.

137)   DACF is liable under the Rehab Act because Plaintiff was subjected to a hostile work environment because of her disability.

138)   DACF is liable under the Rehab Act because Plaintiff was constructively discharged because of her disability.

139)   DACF is liable under the Rehab Act because it failed to engage, in good faith, in an informal, interactive process with Plaintiff to determine an appropriate accommodation, in violation of the Rehab Act.

140)   DACF is liable under the Rehab Act because it failed to provide plaintiff with reasonable accommodations, in violation of the Rehab Act.

## COUNT VIII:  TITLE VII VERSUS DACF

141)   Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

142)   DACF is liable under Title VII because Plaintiff was subjected to adverse employment actions because of her sex.

143)   DACF is liable under Title VII because Plaintiff was subjected to materially adverse actions because she opposed practices that would be a violation of Title VII.

144)   DACF is liable under Title VII because Plaintiff was subjected to a hostile work environment because of her sex.

145)   DACF is liable under Title VII because Plaintiff was constructively discharged because of her sex.

## COUNT IX: EQUAL PROTECTION
## VERSUS DAVID POTTER

146)   Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

147)   David Potter violated Plaintiff's rights to Equal Protection by discriminating against Plaintiff because of her sex, failing to stop the retaliation against Plaintiff for complaining about sexual discrimination, and by himself retaliating against Plaintiff for complaining about sexual discrimination.

## COUNT X: EQUAL PROTECTION
## VERSUS DUANE THERIAULT

148)   Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

149)     Duane Theriault violated Plaintiff's rights to Equal Protection by discriminating against Plaintiff because of her sex, failing to stop the retaliation against Plaintiff for complaining about sexual discrimination, and by himself retaliating against Plaintiff for complaining about sexual discrimination.

## COUNT XI: EQUAL PROTECTION
## VERSUS KURT COULOMBE

150)     Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

151)     Kurt Coulombe violated Plaintiff's rights to Equal Protection by discriminating against Plaintiff because of her sex, failing to stop the retaliation against Plaintiff for complaining about sexual discrimination, and by himself retaliating against Plaintiff for complaining about sexual discrimination.

## COUNT XII: FIRST AMENDMENT
## VERSUS DAVID POTTER

152)     Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

153)     David Potter violated Plaintiff's rights under the First Amendment by failing to stop the retaliation against Plaintiff for complaining about matters of public concern, and by himself retaliating against Plaintiff for complaining about matters of public concern.

## COUNT XIII: FIRST AMENDMENT
## VERSUS DUANE THERIAULT

154)     Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

155)     Duane Theriault violated Plaintiff's rights under the First Amendment by failing to stop the retaliation against Plaintiff for complaining about matters of public concern, and by himself retaliating against Plaintiff for complaining about matters of public concern.

## COUNT XIV: FIRST AMENDMENT
## VERSUS KURT COULOMBE

156)     Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

157)     Kurt Coulombe violated Plaintiff's rights under the First Amendment by failing to stop the retaliation against Plaintiff for complaining about matters of public concern, and by himself retaliating against Plaintiff for complaining about matters of public concern.

## DEMAND FOR JURY TRIAL

158)     Plaintiff demands a trial by jury on all matters to which Plaintiff has a right to trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a)     Enter Judgment in her favor;

(b)     Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights;

(c)     Enjoin Defendants, their agents, successors, employees, and those acting in concert with Defendants from continuing to violate the rights of the Plaintiff;

(d)     Order Defendants to employ Plaintiff as if none of the discrimination had occurred or, in lieu of employment if such employment is determined to be impracticable, order front pay and benefits;

23

(e)     Award Plaintiff back pay, lost employment benefits, other lost compensation, and interest on those amounts;

(f)     Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(g)     Award Plaintiff an amount to offset the state and federal taxes she will be required to pay for compensatory damages and any increased taxes she will have to pay because she has received a lump sum for lost wages, employment benefits, or other lost compensation;

(h)     Award Plaintiff nominal damages;

(i)     Award Plaintiff punitive damages against the individual Defendants in an amount to be determined at trial of this matter;

(j)     Award Plaintiff attorney's fees, including legal expenses, expert witness fees, and costs of suit;

(k)     Award Plaintiff prejudgment interest; and

(l)     Grant Plaintiff such other and further relief as may be just and proper.


Dated: January 30, 2017                    /s/ John P. Gause
                                           _____
                                           John P. Gause, Esq., Bar No. 8192
                                           Eastern Maine Law, LLC
                                           77 Exchange Street, Suite 300
                                           Bangor, ME 04401
                                           (207) 947-5100
                                           jgause@easternmainelaw.com

                                           ATTORNEY FOR PLAINTIFF